# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GREGORY GEORGE HELM,

    Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

Case No. 1:19-cv-00983-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

_____/

## I.  INTRODUCTION

On July 17, 2019, Plaintiff Gregory George Helm ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 4, 6.)

## II.         FACTUAL BACKGROUND

On July 31, 2015, Plaintiff protectively filed an application for DIB payments, alleging he became disabled on April 2, 2014 due to "[t]rigger finger on 5 fingers," "sharp stabbing pains in . . . left wrist," "unable to kneel, tibia vara left knee, quadriceps rt knee," "degenerative disk disease in back," "right shoulder torn rotary cuff," "heel spurs," arthritis, "borderline diabetic," and high blood pressure. (Administrative Record ("AR") 15, 63.) Plaintiff was born on January 26, 1964 and was 49 years old as of the alleged onset date. (AR 63.) Plaintiff completed three years of college, has past work experience as an industrial maintenance mechanic, and last worked full-time in approximately 2014. (AR 66, 72.)

**A.  Summary of Relevant Medical Evidence**

    **1.  Jacob Peters, M.D.**

On June 23, 2015, Plaintiff presented to family care physician Jacob Peters for evaluation of back pain, arthritis, allergies, gastritis, nocluria, hyperlipidemia, and hypertension. (AR 317–18.) Dr. Peters diagnosed Plaintiff with arthritis and hypertension and recommended that Plaintiff improve his diet. (AR 318.) Dr. Peters' treatment notes from August 5, 2015, and August 25, 2015, were largely unchanged. (*See* AR 314–17.) On October 22, 2015, Dr. Peters noted that Plaintiff had been taking ibuprofen, but his back pain persisted. (AR 390.) On March 11, 2016, Dr. Peters saw Plaintiff for back pain. (AR 379.) Dr. Peters stated Plaintiff's back pain was "worsening" and he recommended a muscle relaxant. (AR 379.) Dr. Peters directed Plaintiff to get on a "healthy diet" and do stretching exercises and resistance training and scheduled the next visit for one year later. (AR 384.)

On July 14, 2017, Dr. Peters completed a medical source statement on behalf of Plaintiff. (AR 485–88.) Dr. Peters opined that Plaintiff could sit/stand/walk for 15 minutes at a time and for less than 2 hours a day, must walk every 15 minutes for 5 minutes at a time, and would take unscheduled breaks every half hour. (AR 485–86.) Dr. Peters opined Plaintiff could rarely lift 10 pounds and never lift more than that; could never stoop, crouch/squat, or climb ladders; was incapable of even low stress work; and would be off task 25% or more of the day. (AR 487.)

## 2. California Heart Medical Associates

On August 24, 2016, Plaintiff established care at California Heart Medical Associates, where he was treated primarily by cardiologist Bipin Joshi, M.D. (*See* AR 511.) At the initial appointment, Dr. Joshi noted that Plaintiff complained of "dizziness upon exertion" and shortness of breath. (AR 507.) Dr. Joshi assessed Plaintiff with "dyspnea," hypertension, hyperlipidemia, and type 2 diabetes mellitus. (AR 510.) Dr. Joshi advised Plaintiff to lose weight, exercise, adjust his diet, and continue his current blood pressure medication. (AR 510.) Dr. Joshi saw Plaintiff again on January 18, 2017, and his recommendations for Plaintiff remained unchanged. (AR 504.)

## 3. Sierra Pacific Orthopedic Center

Plaintiff presented to Sierra Pacific Orthopedic Center on September 21, 2016, for treatment of his orthopedic conditions. (AR 616.) The attending physician assessed Plaintiff with low back pain and disc degeneration in the lumbar region, and noted that Plaintiff "did not respond to . . . [a] lumbar epidural injection" he received on September 7, 2016. (AR 613, 616.) On July 1, 2016, the attending physician noted Plaintiff had normal gait, tightness during straight leg raise, tenderness only in the L5-S1 area of the back, and central back pain. (AR 609–10.) On December 29, 2016, Plaintiff presented for a follow-up from a back procedure and reported that his back pain before the procedure was 4 out of 10, and he experienced "complete relief in the recovery area" after the procedure. (AR 586.) On June 22, 2017, Plaintiff reported some worsening of his symptoms. (AR 581.)

## 4. Reedley Physical Therapy

Plaintiff underwent several sessions of physical therapy for his back issues at Reedley Physical Therapy in late 2015 and early 2016. (*See* AR 465–80.) The treatment notes from Reedley reflect that Plaintiff made progress through his physical therapy sessions and tolerated the therapy well. (AR 470–73.) On January 14, 2016, physical therapist Drew Branch, PT, DPT, discharged Plaintiff and wrote that Plaintiff reported "low back pain, neck pain, right hip pain, and left thigh numbness/tingling." (AR 474.) Dr. Branch stated that Plaintiff "remained compliant" but "no significant gains have been made" and "[f]urther therapy is not warranted[.]" (AR 474.)

### 5. Madhav Suri, M.D.

On December 18, 2017, Plaintiff established care with neurologist Madhav Suri, who diagnosed Plaintiff with multiple sclerosis, pain in the spine, and carpal tunnel syndrome, among other conditions. (AR 642.) Dr. Suri scheduled Plaintiff for an "EMG test" on January 4, 2018 and a follow-up on March 7, 2018. (AR 642.) On January 4, 2018, Dr. Suri saw Plaintiff for "Electromyography and Nerve Conduction Studies." (AR 711.) Dr. Suri noted that nerve conduction studies of Plaintiff's upper extremities were "indicative of bilateral median nerve entrapment at the wrists, mild." (AR 713.) Dr. Suri noted that the nerve conduction studies and electromyography of Plaintiff's lower extremities were "normal." (AR 713.) Dr. Suri saw Plaintiff again on March 7, 2018 for the follow-up appointment, and diagnosed Plaintiff with "trigeminal neuralgia," "atypical face pain," and "common migraine (without aura) with intractable migrane[.]" (AR 706.)

### 6. Dale Van Kirk, M.D.

On January 3, 2016, orthopedic surgeon Dale Van Kirk conducted a consultative examination of Plaintiff. (AR 354–58.) Dr. Van Kirk diagnosed Plaintiff with "[c]hronic cervical and dorsolumbar musculoligamentous strain/sprain, likely associated with degenerative disc disease," and "[i]nfrapatellar tendonitis of the knees bilaterally." (AR 358.) Dr. Van Kirk opined that Plaintiff could stand/walk for six hours out of an eight-hour day, had no sitting limitations, did not require an assistive device, could lift and carry 10 pounds frequently and 20 pounds occasionally, had no manipulative limitations, could perform frequent postural activities, and should avoid extremely cold or damp environments. (AR 358.)

### 7. State Agency Physicians

On February 11, 2016, S. Clancey, M.D., a Disability Determinations Service medical consultant, assessed the severity of Plaintiff's impairments and Plaintiff's physical RFC. (AR 70–71.) Dr. Clancey opined that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently; sit, stand and walk six hours in an eight-hour workday; push/pull unlimited amounts; climb ramps/stairs frequently and ladders/ropes/scaffolds occasionally; balance, stoop, kneel, crouch, and crawl frequently; and had no other limitations. (AR 70–71.)

Upon reconsideration, on April 27, 2016, another Disability Determinations Service medical consultant, K. Mohan, M.D., affirmed some portions of Dr. Clancey's findings but found that Plaintiff could lift/carry only 20 pounds occasionally and 10 pounds frequently.  (AR 85–86.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on February 12, 2016, and again on reconsideration on April 29, 2016.  (AR 91–95, 99–105.)  On May 5, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 106–07.)

On May 11, 2018, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions.  (AR 30–62.)    Plaintiff testified that he gets dizzy sometimes and that he has pain when he "overlift[s] [his] boundaries."  (AR 41–42.)  Plaintiff testified that most of the day he sits in his recliner but gets up "[o]n and off throughout the day" to go outside and do yardwork or walk around.  (AR 42.)  Plaintiff testifies he cooks also.  (AR 49.)  Plaintiff naps once a day for one or two hours usually, and lays down for a while when he gets dizzy or has a lot of pain in his back.  (AR 43.)  Plaintiff stated that his hands get "stabbing pain or they're real weak" at times, but usually they are fine if he is handling "light stuff."  (AR 43.)  Plaintiff stated that if he stands in one place too long his leg goes numb.  (AR 48.)  Plaintiff stated that the pain in his back is always present, and usually is about a four or five on a pain scale of one-to-ten.  (AR 49.) Plaintiff stated he stopped working in 2014 due to his physical issues.  (AR 51.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a maintenance mechanic, Dictionary of Occupational Titles (DOT) code 638.281-014, which was heavy work per the DOT, medium as performed by Plaintiff, with a specific vocational preparation (SVP)[2] of 7.  (AR 55.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work background.  (AR 56.)  The VE was also to assume this person could work at the light exertional level, could tolerate frequent ramps and stairs, could not use ladders, ropes, or scaffolds, could perform occasional balancing, stooping, kneeling, crouching, and crawling, could

---

[2] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

tolerate occasional extreme cold environments, could tolerate occasional extreme humidity or dampness, and could perform frequent handling and fingering. (AR 56.)  The VE testified that such a person could not perform Plaintiff's past relevant work. (AR 56.)  The VE testified that the person could perform other work, including cashier II, DOT code 211.462-010, which is light work with a SVP of 2 and 843,000 jobs available in the national economy; sales attendant, DOT code 299.677-010, which is light work with a SVP of 2 and 215,000 jobs available; and cafeteria attendant, DOT code 311.677-010, which is light work with a SVP of 2 and 61,000 jobs. (AR 56.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person would have to take two breaks of ten minutes each per day. (AR 57.)  The VE testified that such a person could not perform any work. (AR 57.)  Plaintiff's attorney posed a third hypothetical, which involved an individual with the limitations in the first hypothetical except that the person could never stoop. (AR 57.)  The VE testified that such a person could not perform Plaintiff's past relevant work or any other work. (AR 58.)  Plaintiff's attorney posed a fourth hypothetical, which involved an individual with the limitations in the first hypothetical except that the person could only stand for two hours per day and would be limited to occasional reach and occasional fingering. (AR 58.)  The VE testified that the individual would not be able to do any work. (AR 58.)

**C.    The ALJ's Decision**

In a decision dated July 23, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–23.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 17–23.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since April 2, 2014, the alleged onset date (step one). (AR 17.)  At step two, the ALJ found Plaintiff had severe impairments of degenerative disc disease, carpal tunnel syndrome, and hypertension. (AR 17.)  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three). (AR 18.)

The ALJ assessed Plaintiff's RFC and applied the RFC assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and

step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can frequently climb ramps and stairs, but never ladders, ropes, or scaffolding. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] can tolerate occasional exposure to extreme cold, or humid or damp environments. [Plaintiff] can frequently handle and finger.

(AR 18.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 19.) At step five, the ALJ found that Plaintiff could not perform his past relevant work, but there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 21–22.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 13, 2019. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial

gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th

Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

**IV.   DISCUSSION**

Plaintiff contends that the ALJ erred in her evaluation of Dr. Peters' opinion and her evaluation of Plaintiff's credibility. (Doc. 16 at 5.)  The Commissioner responds that the ALJ properly evaluated Dr. Peters' opinion and Plaintiff's credibility.  (Doc. 17 at 9–16.)  For the reasons stated below, the Court agrees with the Commissioner's position.

**A.   The ALJ Properly Evaluated Dr. Peters' Opinion.**

**1.   Legal Standard**

The ALJ must consider and evaluate every medical opinion of record.  *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018).  In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)). The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ

may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

### 2. Analysis

Plaintiff alleges―and the record reflects―that Dr. Peters was Plaintiff's treating physician. (*See, e.g.,* Doc. 16 at 5.) "If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *cf. Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)). "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given." *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of

---

[3] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). *See also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Dr. Peters treated Plaintiff from approximately February 2015 through January 2018. (AR 312–26, 625–38.) On July 14, 2017, Dr. Peters submitted a medical source statement on behalf of Plaintiff, in which he opined to extreme limitations including that Plaintiff would be off task 25 percent or more of the day. (AR 485–88.)

In weighing Dr. Peters' opinion, the ALJ stated:

> Jacobs Peters, M.D., completed a medical source statement in which he opined that [Plaintiff] could not even do activities characteristic of sedentary work, could use his hands less than fifteen percent of the day, would be off task twenty-five percent of the day, was incapable of even low-stress work, and would be absent from work more than four days per month. I have given this opinion little weight. The extreme limitations are not supported by the record, which shows the ability to function with normal gait, strength, and motion, or [Plaintiff's] statements about his activities of daily living, which show the ability to do light yard work and cook.

(AR 21) (internal record citations omitted).

In sum, the ALJ discounted Dr. Peters' opinion because it was inconsistent with Plaintiff's activities of daily living and Plaintiff's level of impairment reflected in the medical evidence and Plaintiff's testimony. (AR 21.) The ALJ adopted the opinions of Dr. Mohan and Dr. Van Kirk, as their opinions were consistent with the medical evidence. (AR 20.) Although not specifically noted by the ALJ, Dr. Peters' opinion was contradicted by other medical opinions in the record. Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for assigning little weight to Dr. Peters' opinion. *See Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

### a. Inconsistency with Objective Evidence

The ALJ properly gave little weight to Dr. Peters' opinion regarding Plaintiff's physical limitations. First, as the ALJ found, Dr. Peters' opinion as to Plaintiff's physical limitations was inconsistent with the medical evidence, including the opinions of Dr. Mohan and Dr. Van Kirk. (*Compare* AR 485–88 *with* AR 85–86, 358.) For example, Dr. Peters opined that Plaintiff would be off task more than 25 percent of the day, while Dr. Mohan and Dr. Van Kirk did not include any

such limitation in their assessments; Dr. Peters also opined that Plaintiff would only be able to sit/stand/walk for less than two hours a day, while the other physicians opined Plaintiff could sit/stand/walk for up to six hours a day.  (*See* AR 86, 358, 488.)

Opinions of non-examining physicians, such as state agency physicians, "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."  *Andrews*, 53 F.3d at 1041; *Tonapetyan*, 242 F.3d at 1149.  The opinion of Dr. Mohan is consistent with and supported by the medical evidence in the record, for example, the assessment of examining physician Dr. Van Kirk stating that Plaintiff had normal gait and relatively mild symptoms, which the ALJ cited to in her decision.  (*See* AR 20–21, 372.)  Further, Dr. Van Kirk's opinion is consistent with and supported by the medical evidence, including Dr. Mohan's opinion and the observations of Dr. Suri, (*see, e.g.,* AR 707), and the ALJ properly afforded Dr. Van Kirk's opinion great weight.[4]  (*See* AR 20.)  Thus, the Court finds inconsistency with the objective evidence is a "specific and legitimate" reason supported by substantial evidence for assigning little weight to Dr. Peters' opinion.

### b.  Inconsistency with Plaintiff's Activities of Daily Living

The ALJ also discounted Dr. Peters' opinion because it was inconsistent with Plaintiff's testimony regarding his activities of daily living, including Plaintiff's testimony regarding doing yardwork and cooking regularly.  (AR 21.)  The ALJ properly cited Plaintiff's activities of daily living as inconsistent with Dr. Peters' opinion.  For example, Plaintiff testified to doing regular household chores, while Dr. Peters' opinion limited Plaintiff to standing for no more than fifteen minutes at a time.  *See Matsukado v. Berryhill*, CIV. NO. 19-00045 LEK-KJM, 2020 WL 967337, at *11 (D. Haw. Feb. 27, 2020).  Thus, the Court finds this is also a "specific and legitimate" reason

---

[4] Thus, contrary to Plaintiff's assertion, the ALJ properly relied upon the opinion of examining physician Dr. Van Kirk and discounted the opinion of treating physician Dr. Peters, as Dr. Van Kirk's opinion was consistent with the objective medical evidence.

to discount Dr. Peters' opinion. *See, e.g., id.* ("[T]he inconsistencies between Plaintiff's activities of daily living and Dr. Kipta's opinion support the ALJ's decision to assign little weight to Dr. Kipta's opinion"); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600–602 (9th Cir. 1998).

The Court also notes that Dr. Peters' opinion was mainly given in the form of a checklist, with little information as to what clinical findings supported the opinion, or why any particular section on the checklist was marked. (*See* AR 485–88.) "A treating physician's opinion that is 'conclusory or brief' and lacks support of clinical findings may be rejected by an ALJ." *Gomez v. Berryhill*, No. 1:17-cv-01035-JLT, /2019 WL 852118, at *8 (E.D. Cal. Feb. 22, 2019) (citation omitted); *see also Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996) ("The ALJ permissibly rejected . . . check-off reports that did not contain any explanation of the bases of their conclusion"); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). Thus, the ALJ properly rejected Dr. Peters' opinion for the additional reason that it was mainly given in the form of a checklist with little accompanying explanation.

Finally, to the extent Plaintiff contends the ALJ improperly rejected any ultimate opinion of Dr. Peters that Plaintiff was unable to work, that is a conclusion reserved for the Commissioner. *See Murillo v. Colvin*, No. CV 12-3402-MAN, 2013 WL 5434168, at *4 (C.D. Cal. Sept. 27, 2013) ("[T]he ALJ provided a specific and legitimate reason for disregarding [the treating physician's] ultimate conclusion … that plaintiff is disabled" (citing 20 C.F.R. § 404.1527(e)(1))); *Soroka v. Berryhill*, No. 1:17-CV-01571-GSA, 2018 WL 6243020, at *10 (E.D. Cal. Nov. 29, 2018) ("A conclusory opinion that a claimant is disabled is entitled to little weight since the Commissioner 'will not give any significance to the source of an opinion on issues reserved to the Commissioner,' including whether a claimant is disabled" (quoting *Calhoun v. Berryhill*, 734 F. App'x 484, 487 (9th Cir. 2018)).

**B.     The ALJ Properly Discounted Plaintiff's Subjective Symptom Statements.**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet" and it "is the most demanding [standard] required in Social Security cases."  *Garrison*, 759 F.3d at 1015 (citation omitted).  "General findings are insufficient" to satisfy this standard.  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  "[R]ather,

the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see, e.g., Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

### 2. Analysis

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 19.) Thus, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for her adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

In evaluating Plaintiff's credibility, the ALJ stated, in part:

> As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the medical record. While [Plaintiff] alleges that his musculoskeletal impairments are disabling, the medical record shows instead that [Plaintiff] had normal gait throughout the alleged period of disability. [Plaintiff] had normal or only slightly reduced range of motion. He had normal strength for general motor functions, and slightly reduced grip and pinch strength in his hands. The objective examination findings do not support [Plaintiff's] allegations.

(AR 19.) The ALJ also reasoned that the alleged severity of Plaintiff's symptoms were inconsistent with his activities of daily living. (AR 20–21.) The Court finds that the ALJ offered sufficient "clear and convincing" reasons, supported by substantial evidence, to discount Plaintiff's credibility.

First, as to the inconsistency with the objective medical evidence, "the Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's

17

subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Ondracek v. Comm'r of Soc. Sec.*, No. 1:15-cv-01308-SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680). However, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others." *Salas v. Colvin*, No. 1:13-cv-00429-BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

Here, the ALJ cited numerous treatment notes that contradicted Plaintiff's testimony at the hearing regarding his physical impairments. (AR 19.) For example, Plaintiff was consistently found, by multiple physicians, to have normal gait, strength, and motor function, (*see, e.g.,* AR 609–10, 372), while Plaintiff testified that he has significant strength and motor function deficiencies, including that he must sit in a recliner most of the day as it is too painful to stand and walk too long, his leg goes numb if he stands for too long, he has constant back pain, and he has stabbing pain in his hands. (*See* AR 42–49.) Further, the ALJ properly relied upon evidence that Plaintiff experienced "complete relief in the recovery area" after certain treatment to show that Plaintiff's conditions were less disabling than he alleged. (*See* AR 19, 586.) Thus, the Court finds that inconsistency with the objective evidence is a "clear and convincing" reason to discount Plaintiff's credibility. *See Salas*, 2014 WL 4186555, at *6.

The ALJ also found that Plaintiff's reported activities of daily living were inconsistent with the alleged severity of his symptoms. (AR 20–21.) It is appropriate for an ALJ to consider a claimant's activities that undermine claims of totally disabling pain in making the credibility determination. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient

to discredit an allegation of disabling excess pain. *Fair*, 885 F.2d at 603. "Even where the claimant's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ found that Plaintiff reported that he regularly did yardwork and cooked for himself, which suggested that Plaintiff's impairments were not as severe as Plaintiff reported them to be. (*See* AR 21.) The Court finds that the ALJ properly found that these activities "contradict claims of a totally debilitating impairment" and Plaintiff's claim that he is unable to work due to his physical impairments. *See Molina*, 674 F.3d at 1113. Thus, the Court finds that this is also a sufficiently "clear and convincing" reason to discount Plaintiff's credibility and his allegations of totally disabling physical impairments.

Therefore, the Court finds the ALJ properly discounted Plaintiff's credibility by offering multiple sufficiently "clear and convincing" reasons to reject Plaintiff's physical symptom statements.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **August 25, 2020**                          /s/ *Sheila K. Oberto*
                                                  UNITED STATES MAGISTRATE JUDGE